# UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

739 First St., #B
Calexico, California 92231

**APPLICATION AND AFFIDAVIT**

**FOR SEARCH WARRANT**

**CASE NUMBER:** '07 MJ 8998

I, Irene Solorzano being duly sworn depose and say:

I am a(n) Lead Border Patrol Agent of the U.S. Border Patrol and have reason to believe that on the person of or X on the property or premises known as (name, description and/or location)

**SEE ATTACHMENT A**

in the SOUTHERN District CALIFORNIA
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**SEE ATTACHMENT B**

which is: (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

Evidence of the commission of a criminal offense

concerning a violation of Title 8 United States Code, Section(s) 1324
The facts to support a finding of Probable Cause are as follows:

FILED
DEC 19 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

**SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof. X Yes ___No

[signature]
Signature of Affiant

Sworn to before me, and subscribed in my presence

12-19-07 @ 12:20 pm at El Centro, California
Date City and State

PETER C. LEWIS
U.S. MAGISTRATE JUDGE
Name and Title of Judicial Officer

[signature]
Signature of Judicial Officer

## RETURN

| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF
Lead Border Patrol Agent IRENE SOLORZANO

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant

______________________________

Subscribed, sworn to, and returned before me this date.

______________________________ ______________

U.S. Judge or Magistrate | Date

# ATTACHMENT A

The premises at 739 East First Street, Apartment B, Calexico, California is further described as follows:

739 East First Street, Apartment B is a one story duplex unit, attached to 739 East First Street, Apartment A. Apartment B is located on the east side of the building. Both units are single-family residential units. The house is light tan in color with a light colored shingle roof, which is accessible on the south side from First Street. There is a back door, which is accessible from Renaud Court. The property has a brick wall dividing it from its neighbor to the west, but does not have any other fence around the property. 739 East First Street, Apartment B, is the unit that is located on the northwest corner of Encinas Ave. and First Street, with Renaud Court directly to its north. Both units are owned by Luis Garcia.

## 739 East First Street, Apartment B



# ATTACHMENT B

Deleted PCL

~~1. In conjunction with violations of 8 USC 1324 the search for a Concealed male wearing dark colored clothing seen entering the premise at 739 First Street Apartment B.~~

2. In conjunction with violations of 8 USC 1324 Names of arrangers of alien smuggling; lists containing names of smuggled aliens along with their destination and fees paid or to be paid; registrations and titles of vehicles used in the smuggling and transporting of illegal aliens; financial records and bank statements recording the receipt of money from smuggling, cellular telephones and chargers, telephone tolls of calls, documents and receipts evidencing temporary lodging of illegal aliens; documents showing possession, dominion, and/or control of said premises, including canceled mail, keys, rent receipts, utility bills, deeds, leases and photographs; property of smuggled aliens in the form of wallets, purses, suitcases, tote bags, and clothing; checks, money-orders, and money order receipts as well as U.S. and foreign currency.

3. In conjunction with violations of 8 USC 1324 Documents and articles of personal property evidencing the possession, distribution, sale and manufacture of counterfeit U.S. documents, including: ledgers, customer lists, records of counterfeit or genuine document sales, telephone/address books or notebooks containing the names of individuals who have purchased or wish to purchase counterfeit or genuine immigrant documents.

DELETED PCL

~~4. In conjunction with violations of 8 USC 1324, 1028 (a)(1) and (c)(1) Cash or checks or other monetary instruments obtained from the sale of counterfeit or genuine immigration documents, only to the extent that there are actual receipts or proof that the funds are from these illegal activities. Bank accounting, or other financial records which are records of earning or payments relating to the sale of the counterfeit or genuine immigration documents.~~

5. In conjunction with violations of 8 USC 1028 (a)(1) and (c)(1) Counterfeit, genuine or altered immigration or social security documents including counterfeit, genuine or altered Alien Registration Receipts cards including, but not limited to Forms I-551, I-151, I-586, I-186, I-688, I-688A, I-688B and I-94; counterfeit, genuine or altered social security cards; as well as documents and identifications from individual States of the U.S. or other Countries.

6. All of the property in #1-5 is evidence of offenses in violation of Title l8, United States Code, Section(s):

## AFFIDAVIT IN SUPPORT OF APPLICATION

STATE OF CALIFORNIA )
) SS
COUNTY OF IMPERIAL )

I, Irene Solorzano, Lead Border Patrol Agent (LBPA), United States Border Patrol (USBP), being duly sworn, depose and state:

**A. <u>Training and Experience:</u>**

1. I have been employed by the U. S. Border Patrol since January of 2000 and am currently assigned to the Calexico Station Intelligence Unit. The Calexico Station Intelligence Unit is tasked with gathering intelligence, investigating, arresting, and prosecuting alien smuggling organizations that utilize the Southern District of California as an operational corridor. These investigations are complex criminal investigations of mid-level to high-level criminal smuggling organizations.

2. During my career, I have assisted in the targeting of multiple smuggling organizations, which resulted in convictions of drivers, guides, harborers, and upper level facilitators for 8 U.S.C. §1324 alien smuggling.

3. In the course of my duties, I investigate and prepare for prosecution, cases against persons involved in the inducement of illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; the transportation or harboring of undocumented aliens within the United States; and the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by undocumented aliens to illegally gain entry or remain in the United States.

**B. Purpose of This Affidavit:**

4. This affidavit is submitted in support of application for the issuance of a search warrant for the following premise: a single family residence located at 739 East First Street, Apartment B in Calexico, California 92231 (more fully described in Attachment A, incorporated herein by reference). Based on the events and information described below, there is probable cause to believe that members of an alien smuggling organization are utilizing the aforementioned residence to conduct alien smuggling operations which may include the harboring of smuggled undocumented aliens in violation of 8 USC 1324, 371 Conspiracy, 2 Aiding and Abetting. The information set forth below is based upon my personal observations, my conversations with other law enforcement personnel, my review of reports prepared by myself or other law enforcement personnel, and conversations with other witnesses.

**C. Glossary:**

5. The terms set forth below are widely utilized by law enforcement officers when referring to the duties and/or roles of alien smuggling conspirators and operational sites:

a. Load house. Premises utilized to harbor and conceal undocumented aliens while awaiting further transportation north and/or pending delivery within the United States. A load house may be any type of dwelling ranging from apartment units to single family residence.

b. Admin house. Premises utilized to plan, organize, and conduct administrative aspects of alien smuggling operations including the manufacturing of fraudulent documents, maintenance of ledgers, and storage of smuggling proceeds. An admin house may also be used to harbor and conceal undocumented aliens and may be any type of dwelling ranging from apartment units to single family residence.

c. Load vehicles. Vehicles utilized to transport undocumented aliens further north within the operational corridor.

d. Counter-surveillance. A technique employed by smugglers to detect and/or evade law enforcement surveillance.

**D. Summary of Investigation**

6. The Calexico Station Intelligence Unit has had reports from line agents stating that illegal aliens are entering into apartment #B at 739 First Street. The current tenant of this residence is Caesar Alfonso Dilan. Agents have seen people climb over the International Boundary fence and run directly into this apartment. Due to the proximity of the International Boundary fence, illegal aliens are able to come down off of the fence and run north either through the front or the back door of the apartment. Aliens are kept in the apartment until it is safe to move them further into the U.S. Due to a lack of manpower, it is unknown how long the aliens stay in the apartment or when they move the aliens north. Apartment #B is very active. The duplex at 739 First Street is owned by Luis GARCIA. GARCIA lives in Mexicali, but his mother, Maria Herrera, is the caretaker of the property.

I.S. Caesar Alfonso Dilan is a male in a wheelchair.

7. September 11, 2006, Caesar Alfonso DILAN was apprehended by Border Patrol Agents for alien smuggling at 739 East First Street, Apartment B in Calexico, CA. An agent observed an illegal alien climb over the International Boundary fence and run into Apartment B through the front door. DILAN admitted to agents that he left the front door to his apartment unlocked so that the illegal alien could enter his apartment. DILAN admitted to agents that he expected to be paid $500 for smuggling the illegal alien. (CAX0609000524)

8. On October 6, 2006, Caesar Alfonso DILAN was apprehended by Border Patrol Agents for alien smuggling at 739 East First Street, Apartment B in Calexico, CA. An agent observed an illegal alien climb over the International Boundary fence and ran toward Apartment B's front door. DILAN gave permission for agents to enter and search his apartment. Agents discovered the illegal alien that had climbed over the fence inside DILAN's apartment. The illegal alien admitted to agents that he was shown a man in a wheelchair in front of an apartment. The illegal alien stated that he was instructed to run inside of that apartment.

9. On June 09, 2007, Caesar Alfonso DILAN was apprehended by Border Patrol Agents for alien smuggling at 739 East First Street, Apartment B in Calexico, CA. An agent observed DILAN come out of his apartment and yell to an individual on the south side of the International Boundary fence. An illegal entrant climbed over the International Boundary fence and ran toward Apartment B's back door. The agent was able to apprehend the illegal entrant before he was able to enter the residence. A second illegal entrant climbed over the same fence right behind the first. The second illegal entrant was also apprehended by Border Patrol Agents before entering the apartment. Both illegal entrants stated to Border Patrol Agents they had been instructed to enter that specific apartment and a man in a wheelchair would allow them inside. (CAX0706000352)

10. On October 18, 2007, Jose TORRES was apprehended for alien smuggling at 739 East First Street, Apartment B in Calexico, CA. An agent observed an illegal entrant climb over the International Boundary Fence and run toward the back door of Apartment B. on 739 East First Street. The agent observed the illegal entrant run inside

of Apartment B. The agent was assaulted by TORRES while attempting to apprehend the illegal entrant (CAX0810000473)

11. On December 17, 2007, at approximately 7:05 pm., Border Patrol Agent J. Carroll observed an individual on the south side of the International Boundary Fence, southwest of the intersection of Encinas Ave. and First St. This individual was hanging atop the International Boundary Fence and looking over to the north side. The individual proceeded to climb over the International Boundary fence and made an illegal entry into the United States. The individual appeared to be a male and was wearing a dark colored jacket. Border Patrol Agent Carroll maintained a constant visual of this suspected illegal entrant as he ran north and crossed First St. toward 739 First St. Agent Carroll observed the illegal entrant open the front screen door of the apartment #B of 739 First Street. The suspected illegal entrant entered this apartment and closed the door behind him. At the same time, Border Patrol Agent J. Diskin responded to the scene and together, Agents Diskin and Carroll, maintained a constant visual of all exits and entrances to this apartment. The Agents have not witnessed any individuals exit or enter the premises. On December 18, 2007 at approximately 5:40 pm., while Border Patrol Agents still maintained surveillance of 739 First Street #B, a subject identified as GUZMAN-Maya, Gerardo was observed coming out of this apartment. Guzman matched the description of the subject observed previously entering #B. I.S. GUZMAN was questioned by Border Patrol Agent Seth Sedano as to his citizenship, to which GUZMAN stated he was a citizen of Mexico without proper documentation to legally remain in the United States. GUZMAN was then transported to the Calexico Station for further processing. Border Patrol Agents still maintained surveillance of 739 First Street #B. While at the station GUZMAN gave a video taped sworn statement. GUZMAN stated a smuggler in Mexicali, Mexico pointed out to him which house he was to enter

from the south side of the International Boundary fence. He stated there were four smugglers that formed a pyramid which he climbed on to jump the International Boundary fence. GUZMAN then ran across the street to where the houses where, and ran into one of them that was almost in front of where he jumped the fence. GUZMAN stated the door was open just a little, but he pushed it open and closed the door behind him. Once inside the house a male adult in a wheelchair received him and told him to calm down, that nothing was going to happen to him, and to sit down. GUZMAN stated the man told him he could go into a bedroom to sleep on a mattress, where he slept all night. The man also told him he could get some soup and water. GUZMAN asked the man how much money he was going to pay, and his response was not to worry about that, and the important thing was that he was alright. GUZMAN was asked by the agents conducting the sworn statement, if either him or the man in the wheelchair were aware that Border Patrol Agents were observing, to which GUZMAN stated yes, they could hear police cars outside. GUZMAN stated the man in the wheel chair told him he had to leave and gave him a bicycle that was inside the house. GUZMAN was then detained exiting through the back door of the apartment with the bicycle.

12. From previous investigations done by fellow co-workers and myself, evidence has shown that this is an active load house. In these types of load houses it has been our experience to find not only undocumented aliens but documentation relating to illegal alien smuggling activities such as ledgers, smuggling lists containing names of smuggling organization members and undocumented aliens, cell phones containing evidence of phone calls made to make smuggling arrangements. There has also been findings of rent receipts, deeds, leases, and utility bills with names of other smuggling associates. Personal belongings such as purses, wallets and suitcases

belonging to smuggled aliens, along with false United States documents used to further entrance to undocumented aliens. Financial records, such as bank accounts and western union transactions revealing monetary gain from smuggling activity.

E. **Conclusion**

13. Based on the above-described information and observations, I believe there is probable cause to search the following premises, for evidence of violations of 8 U.S.C. § 1324, Conspiracy and Aiding and Abetting, 739 East First Street, Apartment B, Calexico, California 92231.

Irene Solorzano,
Lead Border Patrol Agent
U.S. Border Patrol

SUBSCRIBED AND SWORN TO
BEFORE ME THIS 19th DAY
OF DECEMBER 2007

Peter C. Lewis
UNITED STATES MAGISTRATE JUDGE
El Centro, California